UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMMY MORRIS, | ) | CIVIL ACTION NO. 4:19-CV-876 |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | (ARBUCKLE, M.J.) |
| | ) | |
| ANDREW M. SAUL,[1] | | |
| Defendant | | |

## <u>MEMORANDUM OPINION</u>

## I.    INTRODUCTION

Plaintiff Tammy Morris ("Plaintiff"), an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 10). After

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 U.S.C. §405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is supported by substantial evidence. Accordingly, for the reasons stated herein the Commissioner's final decision is AFFIRMED.

## II.    BACKGROUND & PROCEDURAL HISTORY

On February 4, 2014, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr.  19). Plaintiff also protectively filed a Title XVI application for supplemental security income on January 4, 2014. *Id.* In both applications, Plaintiff alleged disability beginning October 1, 2011, when she was 32 years old. *Id.* Plaintiff alleged disability based on the following conditions: two surgeries on left knee scrape out cartilage, hardware installed in lumbar to fix herniated disc, inability to sit, stand, or walk for long periods of time, inability to lift more than 40 pounds, noticeable weakness in left knee, and having to use a cane to ambulate. (Admin. Tr. 66-67). Plaintiff further alleges that the combination of these conditions affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, and concentrate. (Admin. Tr. 134). Plaintiff graduated from high school in 1997 and participated in the regular education program. (Admin. Tr. 141). Before the onset of her impairments, Plaintiff worked as a substitute teacher, a parent/child home visitor, an animal specialist, a

residential program worker, a senior store manager, a quality control/shelf stocker, a telemarketer, an office/store worker, and a pet counselor. (Admin. Tr. 158).

On March 26, 2014, Plaintiff's applications were denied at the initial level of administrative review. (Admin. Tr. 19). On April 1, 2014, Plaintiff requested an administrative hearing. *Id.* On August 7, 2015, Plaintiff, assisted by her counsel, appeared and testified during a hearing before Administrative Law Judge ("ALJ") Michelle Wolfe. (Admin. Tr. 19, 38). On August 28, 2015, the ALJ issued a decision denying Plaintiff's applications for benefits. (Admin. Tr. 16). On December 2, 2015, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 180-83). On July 22, 2016, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1).

On September 13, 2016, Plaintiff appealed the decision of the Appeals Council to this Court. (Doc. 1).[2] On August 21, 2017, the Court issued a decision, concluding that the Commissioner's decision was not supported by substantial evidence and remanded the matter to the Commissioner to fully develop the record,

---

[2] Plaintiff's September 13, 2016 appeal to this Court can be found at case number 19-CV-1878.

conduct a new administrative hearing, and appropriately evaluate the evidence

pursuant to sentence four of 42 U.S.C. § 405(g). In the decision, the Court held:

> The decision of the ALJ is plainly deficient under [the] guidance [of
> *McKay v. Colvin,* No. 3:14-CV-2020, 2015 WL 5124119 *(*M.D. Pa.
> Aug. 13, 2015)]. The ALJ notes five opinions from four sources,
> including Dr. Lewis. First, the ALJ afforded "little weight" to the
> opinion of Dr. David Hutz (Doc. 10-3, at 2-17), the State Agency
> medical consultant, as Dr. Hutz did not have the benefit of the entire
> record for consideration. (Doc. 10-2, at 31). Next, the ALJ afforded "no
> weight" to a functional capacity evaluation performed in April 2009 by
> physical therapist Matt Hoppel (Doc. 10-7, at 14), as Morris returned
> to full-time work after this opinion was created. (Doc. 10-2, at 31-32).
> Next, the ALJ afforded "little weight" to both opinions offered by Dr.
> Lewis (Doc. 10-2, at 58-64). Lastly, the ALJ afforded little weight" to
> GAF scores from LCSW Helen Creasy (Doc. 10-22, at 51-56), because
> Creasy is not an acceptable medical source, the assessment was during
> an initial consultation, and based on a short treatment relationship.
> (Doc. 10-2, at 32-33). The ALJ noted that she afforded limited weight
> to treating and reviewing physicians, stating that an ALJ is authorized
> to make an RFC determination "without outside medical expert review
> of each fact incorporated into the decision." (Doc. 10-2, at 33).

(Civ. Docket No. 3:16-CV-01878, Doc. 23, pp. 13-14).

The Court further stated:

> While this conclusion is true, an ALJ may not substitute medical
> findings with their own "credibility judgements, speculation or lay
> opinion." *McKay*, 2015 WL 5124119, at *17 (citing *Morales*, 225 F.3d
> at 317-18; *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985)). As
> stated in *Reznick*, McKay requires that the ALJ give any significant or
> great weight to any medical opinion. *Reznick,* 2016 WL 5936893, at *3.
> The ALJ in this case afforded little or no weight to all considered
> medical opinions. Like in *McKay*, the Court is forced to conclude that
> the ALJ therefore "apparently relied on her own substituted medical

opinion in arriving at [the] Plaintiff's RFC." *McKay*, 2015 WL 5124119, at *17.

While affording the opinion of treating source Dr. Lewis [little weight] may or may not itself have constituted error, the ALJ plainly erred under the guidance of this circuit requiring "any significant or great weight" be afforded "to any medical opinion." *Reznick*, 2016 WL 5936893, at *3. Thus, the ALJ erred in crafting an RFC without affording weight to any medical opinion.

*Id.*

Thus, pursuant to the District Court's remand order, on September 18, 2018, Plaintiff assisted by her counsel, appeared and testified during a second hearing before ALJ Michelle Wolf. (Admin. Tr. 922). The ALJ issued a decision denying Plaintiff's applications for benefits on January 29, 2019. *Id.* On May 22, 2019, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In her Complaint, Plaintiff alleges that the ALJ's decision denying the applications is not supported by substantial evidence and improperly applies the relevant law and regulations. (Doc. 1). As relief, Plaintiff requests that the Court reverse the decision of the Commissioner and order an award of benefits, or, in the alternative, order a remand for a proper determination. (Doc. 1, p. 3). On August 14, 2019, the Commissioner filed an Answer. (Doc. 7). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability benefits was made in accordance with the law and regulations and is supported by substantial evidence.

*Id.* Along with the answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 8).

Plaintiff's Brief (Doc. 19), the Commissioner's Brief (Doc. 24), and the Plaintiff's Reply Brief (Doc. 27) have been filed. This matter is now ripe for decision.

III.    STANDARDS OF REVIEW

A. SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir.

1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

The Supreme Court has recently underscored the limited scope of the Court's review of the Commissioner's final decision denying a claimant's application for benefits, stating:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-*Mobile South, LLC v. Roswell*, 74 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; *see, e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

There are several fundamental legal propositions which flow from this deferential standard of review. First, when conducting our review, "we are mindful that we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, the Court must refrain from trying to re-weigh the evidence of record. Rather, our task is to simply determine whether substantial

Page 8 of 31

evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

> The Third Circuit has noted:
>
> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.

*Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

"When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reasons or the wrong reason.' *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). Accordingly, the Court should remand for further consideration whenever the record reveals that evidence was discounted by the ALJ for the wrong reason or no reason.

Thus, the Court's task is twofold. The Court must evaluate the substance of the ALJ's decision under a deferential standard of review but also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions was sufficiently articulated to permit meaningful judicial review.

### B. STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).[3] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant

---

[3] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on January 29, 2019.

must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe

impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was

accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

## IV.   DISCUSSION

In her Brief, Plaintiff raises the following arguments in her statement of errors:

> (1)   Whether the ALJ impermissibly substituted her judgement for that of Plaintiff's treating physician, whose opinion supporting Plaintiff's limitations is well-supported by the medical evidence.

> (2)   Whether the ALJ's RFC, particularly as to the period pre-dating Plaintiff's date last insured, improperly omits any limitations relating to Ms. Morris's medically necessary use of a cane for balance and ambulation.

### A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATIONS

In her January 2019 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through September 30, 2015. (Admin. Tr. 924). Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2011, Plaintiff's alleged onset date. *Id.* At step two, the ALJ

found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: osteoarthritis/degenerative joint disease status-post arthroscopy and abrasion chondroplasty medial femoral condyle (left knee), herniated disc at L5-S1 status-post fusion, and body mass index ("BMI") in the obesity level. (Admin. Tr. 925). The ALJ also found that beginning August 1, 2016, Plaintiff had the following medically determinable severe impairments: superficial venous insufficiency status-post left leg venous ablation with stab phlebectomy in August 2017, post-traumatic stress disorder ("PTSD"), major depressive disorder ("MDD")/depression, post-partum depression, anxiety, and mood disorder. *Id.*

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that from the alleged onset date of October 1, 2011, to July 31, 2016, Plaintiff had the RFC "to perform light work as defined in 20 C.F.R. 404.1567(b) and 416,967(b), except she could occasionally crouch, kneel, crawl, and climb, including ladders, ropes, and scaffolding." (Admin. Tr. 928). The ALJ found that Plaintiff

could frequently stoop and balance. *Id.* However, the ALJ concluded that beginning

August 1, 2016, Plaintiff:

> was limited to less than a full range of sedentary work. She can
> occasionally balance, stoop, crouch, crawl, kneel, and climb, but never
> on ladders, ropes, and scaffolding. The claimant cannot push and/or pull
> with her lower extremities. She must avoid concentrated exposure to
> temperature extremes of cold and heat, wetness, humidity, vibrations,
> and hazards including moving machinery and unprotected heights. The
> claimant uses a cane for ambulation. She is limited to simple, routine
> tasks, but no complex tasks.

*Id.*

At step four, for the period of time from the alleged onset date of October 1,

2011, through July 31, 2016, the ALJ found that Plaintiff was capable of performing

her past relevant work as a daycare attendant and teacher/home therapy. (Admin. Tr.

941). In reaching this determination, the ALJ concluded that "[t]his work does not

require the performance of work-related activities precluded by the claimant's

residual functional capacity." *Id.* However, the ALJ found that in the alternative, for

the period of the alleged onset date of October 1, 2011, to July 31, 2016, Plaintiff

was unable to perform her past relevant work. (Admin. Tr. 942). The ALJ reasoned

that there were additional limitations that supported a finding that as of August 1,

2016, through the date of this decision Plaintiff was unable to perform her past

relevant work. *Id.*

At step five, the ALJ found that, considering Plaintiff's age, education, and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 942-43). To support her conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing. The ALJ determined that for the period of October 1, 2011, to July 31, 2016, (at the light exertional level) Plaintiff was capable of performing the following three (3) representative occupations: an addresser, DOT#209.567-014; an order clerk, DOT#209.567-014; and a nut sorter DOT#521.687-086. (Admin. Tr. 943). The ALJ determined that for the period beginning August 1, 2016, (at the sedentary exertional level) Plaintiff was capable of performing the following three (3) representative occupations: an office helper, DOT#239.567-010; a storage rental clerk, DOT#295.367-026; and a folder, DOT#368.687-018. *Id.*

B.    THE ALJ'S TREATMENT OF DR. LEWIS'S MEDICAL OPINION

Plaintiff first challenges the ALJ's treatment of Dr. Lewis's medical opinion. Plaintiff's argument is under 20 C.F.R. §§ 404.1527(c) and 416.927(c)(2) – provisions commonly referred to as the "treating physician rule." These provisions provide:

> (c) How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the

weight we give to any medical opinion.

. . . .

(1) Treating relationship. Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the eight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.

20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2).

Plaintiff challenges the ALJ's assignment of "little" weight to the medical opinion of treating physician Dr. Ivor F. Lewis ("Dr. Lewis"). Specifically, Plaintiff argues that the ALJ's reasoning for assigning "little" weight to Dr. Lewis's opinion because he was Plaintiff's primary care physician "and not either of her specialists," is improper. (Doc. 19 p. 8-9). Plaintiff relies on 20 C.F.R. § 404.1527(c)(5), arguing that "although the regulations admittedly include a physician's specialty as one

factor that may be considered in evaluating a physician opinion, it is only one factor to be considered." *Id.* at p. 9. Plaintiff contends that when considering her treatment relationship with Dr. Lewis under the factors set forth in 20 C.F.R. § 404.1527(c), Dr. Lewis's opinion is entitled to deference and controlling weight. In support of this argument, Plaintiff notes the following: her treating relationship with Dr. Lewis; her long treating relationship with Dr. Lewis (having treated her since 2010); the frequency of her visits with Dr. Lewis; and the "nature and extent" of her relationship with Dr. Lewis. Further, Plaintiff submits that the ALJ's rejection of Dr. Lewis's opinion, noting that Plaintiff needed a cane, is flawed because her need for an assistive device is well-documented throughout the record.

In response, the Commissioner contends that the ALJ bears the exclusive duty to evaluate medical opinions and judge whether they are supported by and consistent with the record. Thus, the ALJ is not required to accept any medical opinion, including a treating source opinion, when it is unsupported by clinical evidence, internally inconsistent, or contrary to the record. The Commissioner avers that the ALJ did everything required under the regulations – the ALJ "considered each medical opinion including those provided by Dr. Lewis, explained the weight she gave to them, and articulated legally valid reasons to support the weight assigned to each opinion." (Doc. 24, p. 20). In sum, the Commissioner argues that because the

ALJ's decision complied with the dictates of the law, the decision is supported by substantial evidence.

I find that substantial evidence supports the ALJ's assignment of "little weight" to Dr. Lewis' opinion. In June and August of 2014, Dr. Lewis prepared a Lumbar Spine Residual Functional Capacity Questionnaire limiting Plaintiff to less than sedentary work. (Admin. Tr. 535-38). In the questionnaire, Dr. Lewis opined that the Plaintiff could walk one to two blocks without rest or severe pain; she could sit for 30 minutes at a time and a total of two hours in an eight-hour workday; she could stand less than five minutes at a time and was capable of standing and walking less than two hours in an eight-hour work day. (Admin. Tr. 536-37). Further, Dr. Lewis concluded that Plaintiff would need to be assigned periods of walking every 30 minutes during an eight-hour workday; she would need a job that permitted shifting at will from sitting, standing, or walking; she would need to take two to five minute unscheduled breaks at least every 30 minutes in an eight-hour workday; she would need to use a cane while standing and walking; and she could never be required to lift any amount in a "competitive work situation." *Id.*

Dr. Lewis also opined that Plaintiff had positive straight leg raising; she exhibited an abnormal gait and sensory loss; she had reflex changes, tenderness, and muscle spasms; and she had impaired sleep. (Admin. Tr. 535). In terms of postural

limitations, Dr. Lewis opined that Plaintiff could rarely stoop and climb stairs, and could never twist, crouch, squat, or climb ladders. (Admin. Tr. 537). Dr. Lewis also opined that Plaintiff would likely be absent from work more than four days per month as a result of her impairments and/or effects of treatment. (Admin. Tr. 538). In June and August of 2014, Dr. Lewis also prepared a form indicating that Plaintiff's impairments met listing 1.02 (Major dysfunction of a joint(s) (due to any cause) and listing 1.03 (Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint). (Admin. Tr. 539-41). Dr. Lewis also indicated on the form that Plaintiff needed an assistive device to ambulate effectively. (Admin. Tr. 540).

The ALJ accorded little weight to Dr. Lewis's opinion. The ALJ noted that Dr. Lewis was Plaintiff's primary care physician and not a specialist. (Admin. Tr. 940). The ALJ noted that Dr. Lewis's determination that Plaintiff required a cane was inconsistent with his own treatment notes, which noted no assistive device during examinations. *Id.* Moreover, the ALJ noted that Plaintiff had inconsistent treatment and follow-ups with her orthopedist, who believed that the symptoms were more back-related, rather than Plaintiff's knees, after Plaintiff's surgery in 2010. *Id.*

The ALJ also noted the following reasons for according little weight to Dr. Lewis's opinion: although Dr. Lewis noted a foot drop after her back surgery, the other follow-up records demonstrated that Plaintiff had a normal gait; the record

evidence demonstrated only mild osteoarthritis; a June 2014 examination demonstrated that the physical examination was within normal limits other than the use of a cane; Plaintiff's other examinations prior to the June 2014 examination showed a normal gait; and while Plaintiff was limited to a 40 pound lifting and carrying restriction by her surgeon, since then, Plaintiff had been found to have a solid fusion, with only mechanical complaints. *Id.*

Finally, regarding Dr. Lewis's opinion that Plaintiff's impairments met listing 1.02 and 1.03, the ALJ concluded that Dr. Lewis was not a doctor for the Social Security Administration with the understanding of the listings to offer an opinion whether her impairments met or equaled a listing impairment. *Id.*

I note that the Court, on review of the ALJ's decision, is not tasked with revisiting these factual issues, but with determining whether the ALJ provided valid reasons for her evaluations and based her conclusions on substantial evidence. Because the ALJ provided adequate articulations, I find that substantial evidence supports the ALJ's assignment of little weight to the opinion of Dr. Lewis. Remand on this issue is not warranted.

C.     THE ALJ'S RFC DETERMINATION

Plaintiff argues that the RFC crafted by the ALJ as to the period pre-dating

Plaintiff's date last insured—October 1, 2011 to July 31, 2016 – improperly omits

limitations relating to her use of a cane to effectively ambulate.

Specifically, Plaintiff argues:

> As noted in the argument, supra, the ALJ herself acknowledged the
> multiple times that [Plaintiff]'s treating physician observed [Plaintiff]'s
> use of a cane, and recommended its continued use for balance,
> coordination and ambulation, due to the weakness in her knee that
> caused multiple falls. (R. 275, 281, 553, 642, 677, 685, 781, 1366,
> 1390). Nonetheless, the ALJ's RFC finding for the period from the
> alleged onset date of October 1, 2011 to July 31, 2016 does not include
> any limitations associated with the medical necessity for a cane. (R.
> 923, Finding 5). Indeed, the RFC permits her to occasionally crouch,
> kneel, crawl, and climb including ladders, ropes, and scaffolding and
> frequently stoop and balance. Id. (emphasis added). This finding runs
> contrary to the concerns of [Plaintiff]'s primary care physician,
> orthopedist, orthopedic surgeon and physiatrist regarding her
> documented history of falling. For the same reasons enunciated, supra,
> the ALJ's RFC is not supported by the evidence.

(Doc. 19 p. 15).

Plaintiff further argues that the ALJ's RFC determination set forth in the

January 2019 decision is "even more puzzling because it constitutes a significant,

material change from the RFC the ALJ reached in the August 2015 decision, wherein

the ALJ included a limitation that [Plaintiff] 'requires a cane for ambulation.'" Id.

In her August 2015 decision, the ALJ restricted Plaintiff to the following RFC:

> After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) further limited as follows: the claimant can stand and walk for 2 hours throughout a workday; requires the option to transfer positions from sitting to standing and each time between transfers would be up to a maximum of ½ hour but [Plaintiff] would not be off task when transferring; can occasionally balance, stoop, crouch, crawl, kneel, and climb but never on ladders, ropes, or scaffolds; no pushing and pulling with the lower extremities; should avoid concentrated exposure to temperature extremes of cold, wetness, humidity, vibrations, and hazards including moving machinery and unprotected heights; requires a cane for ambulation; and is limited to simple routine tasks.

(Admin. Tr. 24).

Plaintiff asserts that this is not the only significant change in the ALJ's RFC, as the ALJ also determined that she was capable of a range of light work, contrary to her earlier RFC, which limited her to a range of sedentary work. Plaintiff contends that the medical evidence pertaining to that time period did not change from the first hearing, nonetheless, the ALJ found that she was capable of significantly greater activities in her second decision. Plaintiff argues that the only explanation offered by the ALJ concerning this difference is a change in the weight accorded to the opinion of non-treating, non-examining state agency physician Dr. David Hutz. Plaintiff asserts:

> [I]nstead of giving "little weight," (R. 30), she gives "significant weight" to Dr. Hutz's opinion "due to the lack of consistent neurological deficits in her lower extremities." (R. 939). Even with the

added weight, the ALJ chose to reject Dr. Hutz's opinion that Ms. Morris is not capable of climbing ladders, ropes, and scaffolding. Id.

(Doc. 19, pp. 15-16).

Plaintiff also avers that regardless of whether all of the ALJ's changes in the second RFC are justified, her failure to include a limitation requiring a cane for balance and ambulation is contrary to the undisputed medical evidence of record and thus is not supported by substantial evidence. Plaintiff argues that the ALJ's decision denying benefits, therefore, cannot stand, since it is based upon accepting the vocational expert's response to an incomplete hypothetical.

In response, the Commissioner argues:

The ALJ discussed Plaintiff's cane usage throughout her opinion, and specifically included Plaintiff's use of a cane in the RFC beginning in August 2016. (Tr. 928).

. . . .

The record confirms that the only medical provider to deem the cane medically necessary was Dr. [Ziba] Monfared, and that did not occur until December 2016. (Tr. 1513). Accordingly, the ALJ was not required to analyze or further develop Plaintiff's subjective reports about using a cane.

(Doc. 24, pp. 24-25).

The Commissioner further argues:

Here, the record contained no evidence to establish that her use of a cane was medically necessary before Dr. Monfared's December 2016 notation to that effect (Tr. 1513). There is no medical documentation to

that effect prior to that date. In fact, Dr. Lewis' treatment records often confirmed the Plaintiff walked with a normal, ***unassisted*** gait. (Tr. 15-18, 528, 532). Plaintiff's assertion that she used a cane or notations in the record that reflect her use of a cane do not establish medical necessity. <u>See</u> <u>Starks v. Colvin</u>, No. 16-6062, 2017 WL 4053755, at *4 (E.D. Pa. Sept. 12, 2017) ("Mere mention of a claimant's cane use is not enough as isolated notations are insufficient to support a finding that the [claimant's] cane was medically necessary.").

Consequently, the ALJ did not err by including use of cane for the period after August 2016 but not before (Tr. 928, 1158-60).

*Id.* (emphasis in original).

"[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n. 1 (3d Cir. 1999)). The Court's "review of the ALJ's assessment of the plaintiff's RFC is deferential," and the "RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018). In assessing a claimant's RFC, the ALJ must consider all the evidence of the record and, regardless of its source, "evaluate every medical opinion . . . receive[d]." *Burnett*, 220 F.3d at 121 (internal citations omitted); *see* 20 C.F.R. § 404.1527(c); *see also* SSR 96-8P, 1996 WL 374182, at *2 ("RFC is assessed by adjudicators at each level of the administrative review process based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical

source statements'"). If a conflict exists in the evidence, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer*, 186 F.3d at 429 (quoting *Mason*, 994 F.2d at 1066); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). It is the duty of the ALJ to explain the rationale for the weight afforded to each medical opinion, as this allows for meaningful judicial review. *Plummer*, 186 F.3d at 429 ("The ALJ must consider all the evidence and give some reason for discounting the evidence that [the ALJ] rejects." (quoting *Mason*, 994 F.2d at 1066)).

"To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9, 1996 WL 374185 at *7. However, even if the ALJ erred regarding the use of a cane, any error is harmless if the ALJ asked the vocational expert to take the cane into account and there were still jobs available that the claimant could perform. *Howze v. Barnhart*, 53 Fed. App'x 218, 222 (3d Cir. 2002).

In this case, reviewing the record as a whole, I find that the ALJ did not err by failing to include Plaintiff's use of a cane for the period of October 1, 2011, to July 31, 2016. While Plaintiff argues that the ALJ omitted limitations regarding her use of a cane for the first period of October 1, 2011, to July 31, 2016, the ALJ

included limitations concerning her use of a cane for the second period (beginning

August 1, 2016). The ALJ found:

> Beginning August 1, 2016, the claimant was limited to less than a full
> range of sedentary work. She can occasionally balance, stoop, crouch,
> crawl, kneel, and climb, but never on ladders, ropes, and scaffolding.
> The claimant cannot push and/or pull with her lower extremities. She
> must avoid concentrated exposure to temperature extremes of cold and
> heat, wetness, humidity, vibrations, and hazards including moving
> machinery and unprotected heights. The claimant uses a cane for
> ambulation. She is limited to simple, routine tasks, but no complex
> tasks.

(Admin. Tr. 928).

Further, even assuming that the ALJ erred in omitting Plaintiff's use of a cane

in the RFC for the first period, any error is harmless. The ALJ asked the vocational

expert to take Plaintiff's use of a cane into account, (Admin. Tr. 972), and the

vocational expert testified that there were still jobs available that Plaintiff could

perform, including an addresser, DOT# 209.587-010; an order clerk, DOT#

209.567-014; and a nut sorter, DOT#521.687-086. (Admin. Tr. 972-973). Thus,

Plaintiff's argument lacks merit and does not warrant remand.

Next, Plaintiff argues that the ALJ's RFC determination is erroneous "because

it constitutes a significant, material change from the RFC reached in the ALJ's

August 2015 decision, wherein the ALJ included a limitation that [Plaintiff]

'requires a cane for ambulation.'" (Doc. 19 p. 15). Specifically, Plaintiff argues that

there was a material change from the original RFC, in that the ALJ had initially concluded in her August 2015 decision that Plaintiff was capable of performing sedentary work with additional limitations for the period of October 11, 2011 to July 31, 2016. However, in her January 2019 decision, the ALJ found that Plaintiff could perform a limited range of light work for the period of October 11, 2011 to July 31, 2016. I am not persuaded by Plaintiff's argument. In her August 2015 decision, the ALJ concluded that Plaintiff could perform a limited range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a). (Admin. Tr. 24). However, during the same time period, after Plaintiff's second hearing pursuant to the remand order from this Court, the ALJ determined that Plaintiff could perform a limited range of light work. (Admin. Tr. 928). The ALJ explained that this change was due to the change in the weight she accorded to the opinion of non-treating, non-examining state agency physician Dr. David Hutz ("Dr. Hutz"). (Admin. Tr. 939).

The ALJ explained:

> As for the opinion evidence, for the period prior to August 2016, the undersigned gives significant weight to the State Agency (DDS) medical consultant's (Dr. Hutz' (sic)) opinion for a limited range of light exertional (Exhibits 1A and 2A). This opinion was rendered in March 2014. The undersigned gives greater weight to the exertional limitations and the occasional limitations of crouch, kneel, and crawl due to the lack of consistent neurological deficits in her lower extremities. The undersigned gives less weight to the restrictions on no ladders, ropes, and scaffolding, occasional stooping and balancing, and the environmental/hazards limitations. The undersigned finds the

claimant was less limited because of her normal motor strength or minimal deficits. After August 2016, less weight is given to this opinion, since the medical consultant did not have an opportunity to review the additional records that support a reduction in exertional level.

*Id.* (typographical error in the original).

I conclude that the ALJ adequately explained her rationale concerning the change in the levels of exertional work from her August 2015 decision to her January 2019 decision. I find that the ALJ's determination as to this issue is supported by substantial evidence. Plaintiff's argument simply asks the Court to re-weigh the evidence, which this court cannot do. *Rutherford*, 399 F.3d at 552. "In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for those of the fact-finder.'" *Id.* (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Finally, Plaintiff argues that regardless of whether all of the ALJ's changes in the second RFC are justified, her failure to include a limitation requiring a cane for balance and ambulation is contrary to the undisputed medical evidence of record, which establishes that her use of a cane is a medical necessity. As support for this argument, Plaintiff cites to the medical evidence at Admin Tr. 275, 281, 553, 642, 677, 685, 781, 1366, and 1390. The Commissioner contends that the record contained no evidence to establish that her use of a cane was medically necessary

before Dr. Ziba Monfared's December 2016 notation. (Admin. Tr. 1513). I agree with Plaintiff's assertion; the record evidence does, in fact, demonstrate the medical necessity for a cane during the time period of October 1, 2011 to July 31, 2016. (Admin. Tr. 535-38, 539-40). However, I am not persuaded that a limitation requiring a cane in the RFC determination from the period of October 1, 2011 to July 31, 2016, would change the outcome of the ALJ's decision. Plaintiff has not demonstrated that the ALJ's decision was not supported by substantial evidence. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009). Plaintiff has failed to carry this burden. Thus, I find no basis for disturbing the ALJ's determination. Remand is not warranted.

[The following page contains the conclusion.]

V.     CONCLUSION

Accordingly, Plaintiff's request for the award of benefits, or in the alternative

a new administrative hearing is DENIED AS FOLLOWS:

(1)    The final decision of the Commissioner should be AFFIRMED.

(2)    Final judgment should be issued in favor of the Commissioner of the
       Social Security Administration.

(3)    An appropriate Order shall issue

Date: August 10, 2020                          BY THE COURT

                                               *s/William I. Arbuckle*
                                               William I. Arbuckle
                                               U.S. Magistrate Judge